Stock purchased by a broker for a customer, and held as security for the payment of the purchase price by the latter, is not taxable after his death, under the transfer tax law, since the broker was the owner thereof subject to the customer's rights as pledgee.

2. SAME.

Where a broker purchases stock for a customer with his own funds, and retains the stock as security, and the customer dies, and the stock is sold at a loss, which is paid by his representatives, an allowance should be made therefor by the appraiser in determining the property of the estate subject to taxation under the transfer tax law.

3. SAME—EVIDENCE—APPEAL FROM APPRAISER'S REPORT.

Where three printed volumes of the commercial and financial record are introduced in evidence by the appraiser in determining the value of stocks taxable under the transfer tax law, and the particular parts of such books relied on are not pointed out, they will not be considered on an appeal from the appraiser's decision.

4. TAXATION.

In determining the debts against an estate, for the purpose of determining the property taxable under the transfer tax law, an account should not be allowed as a debt of the estate, which represents a gift from the decedent, and is not founded on any consideration.

In the matter of the estate of Theodore A. Havemeyer, deceased. Appeal from an order fixing the tax under the transfer tax law. Order modified.

Purcell & Walker, for comptroller.

Parsons, Shepard & Ogden, for petitioner and administratrix.

John W. Pierson, for executors of Charles F. Havemeyer.

THOMAS, S. Appeal from an order fixing tax under transfer tax law. In estimating the value of the entire personal estate of the testator, for the purpose of ascertaining what portion of the indebtedness should be charged against assets taxable in this state, the appraiser fixes the value of 4,800 shares of the stock of the American Sugar Refining Company at $528,000. The attorneys for the administratrix object to this appraisal, and insist that, under the facts of the transaction concerning this block of 4,800 shares of stock, such stock constituted no part of the estate of the decedent. This stock was purchased for the decedent by his brokers for the gross price of $600,000, moneys which they advanced, and at the time of his death they held this stock, with other stock deposited with them, as collateral. After the death of the decedent, this stock was sold for $528,000, showing a loss in the transaction of $72,209.46, which amount was made good by the administratrix out of the estate. Upon these facts the title of the decedent to the stock

was not absolute, but he held merely the rights of a pledgee with relation to it; the brokers being the owners of the property at law, subject to his right to redeem upon paying the entire amount of the debt. In re Pullman, 46 App. Div. 574, 578, 62 N. Y. Supp. 395. The sale of the stock made by the brokers for the satisfaction of their lien extinguished whatever right or title the decedent or his legal representatives had, and demonstrated that, instead of being the owner of the property, the decedent's estate was indebted in the sum of $72,209.46. This debt was properly allowed by the appraiser, but he erred when, on the opposite side of the account, he charged to the estate the sum of $528,000, and this charge should be stricken from the report, and the appeal of the administratrix allowed with respect thereto. The stock deposited by the decedent with his brokers as extra collateral security for the loan of $600,000 was not the property of the decedent, but formed a portion of an estate created by the decedent under a valid trust instrument, the terms of which were not revocable at his election, except with the consent of the beneficiaries of the trust. As to some of the stocks and bonds appraised and declared taxable, the evidence as to their values is not entirely satisfactory. Three printed volumes of a book known as "The Commercial and Financial Chronicle" are said to have been admitted in evidence, but the particular parts, pages, or portions of these books relied upon by the appraiser have not been pointed out, and I am, therefore, unable to avail myself of any knowledge which the appraiser may have extracted from them, and I propose, therefore, to disregard the entries in these books. I fix the values of the stocks and bonds in dispute, from the evidence before me, as follows: 750 shares of Universal Lasting Machine Company stock, $30; 50 shares Terminal Improvement Company stock, $1,250; 250 shares Terminal Warehouse Company stock, $1,250; 100 shares of American Enamel Brick & Tile Company stock, $3,000; 45 shares of St. Andrew Company stock, $1,050; 5 shares Brooklyn Wharf & Warehouse Company stock, $27; bonds of Terminal Warehouse Company, appraised at $37,500, I value at $26,250; bonds of the New York Deutscher Verein, appraised at $20,000, I value at $10,000; bonds of the Hampton Roads Hotel Company, appraised at $99,000, I value at $94,150; bonds of Express Coal Line Equipment Company, appraised at $47,000, I value at that amount; bonds of New York & New Jersey Fire-Proofing Company, appraised at $5,000, I value at that amount; 1,106 shares of stock of the Berkshire Cotton Manufacturing Company, appraised at $110,000, I value at $99,540; stock of the Sprague Electric Elevator Company, appraised at $3,600, I value at that amount; preferred stock of Sprague Electric Elevator Company, appraised at $5,600, I value at $3,920. Certain debts passed upon by the appraiser are objected to, and I dispose of them as follows: The Vienna account of $14,427.09, disallowed by the appraiser, I also disallow, on the ground that this was a gift from the decedent, and was not supported by any consideration whatever. The Washington bills, $5,002, disallowed by the appraiser, I allow. The Westbury bills, $19,683.19, disallowed by the appraiser, I also disallow, on the ground

that these debts were not sufficiently proved as debts of the decedent. An order may be submitted and settled upon notice, in conformity with the views expressed in this memorandum.